UNITED STATES DISTRICT COURT
SOUTHISN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES R. SHANK, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) No. 1:16-cv-01856-JMS-MJD ) |
| NANCY A. BARRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Charles R. Shank requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 216(i), 223(d), 1382c(a)(3).[1] For the following reasons, the Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the Commissioner's decision for further proceedings.

**I. Background**

Shank filed his application for SSI and DIB on October 7, 2010, alleging an onset of disability date of August 1, 2008. [Dkt. 8-8 at 2 (R. 307).] In his disability report filed in conjunction with his application, Shank listed type 2 diabetes, high blood pressure, fused vertebrae, a ruptured disc, arthritis, sciatica, depression, and emphysema as his disabling

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

1

conditions.[2] [Dkt. 8-8 at 6 (R. 311).] Shank's application was denied initially on January 19, 2011 [Dkt. 8-4 at 2-3 (R. 122-23)] and upon reconsideration on March 29, 2011 [Dkt. 8-4 at 4-5 (R. 124-25)].

Shank requested a hearing on his application [Dkt. 8-5 at 20-21 (R. 174-75)], which was held before Administrative Law Judge Ronald T. Jordan ("ALJ") on March 14, 2012 [Dkt. 8-3 at 2-36 (R. 87-121).] The ALJ issued a partially-favorable decision on July 30, 2012, finding that Shank was disabled beginning November 25, 2011 through the date of decision, but not disabled between August 1, 2008, and November 25, 2011. [Dkt. 8-4 at 6-30 (R. 126-50).] On October 30, 2013, the Appeals Council remanded Shank's case to the ALJ for further consideration of Shank's condition prior to November 25, 2011.

The ALJ held a second hearing on Shank's application on March 6, 2014 [Dkt. 8-2 at 56-87 (R. 55-86)] and, on April 8, 2014, issued a decision again finding Shank not disabled prior to November 25, 2011 [Dkt. 8-2 at 30-55 (R. 29-54).] On August 17, 2015, the Appeals Council denied Shank's request to review the ALJ's second decision, making it the final decision of the Commissioner for the purposes of judicial review. [Dkt. 8-2 at 11-17 (R. 10-16).] Shank timely filed his Complaint in this Court on July 11, 2016, seeking judicial review of the Commissioner's decision. [Dkt. 1; Dkt. 8-2 at 2-4 (R. 1-3) (granting extension of time in which to file complaint).]

---

[2] Shank recited the relevant factual and medical background in extensive detail in his opening brief. [*See* Dkt. 11.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 12.] Because these facts involve Shank's sensitive and otherwise confidential medical information, the Court will incorporate by reference the factual background in the parties' briefs and articulate specific facts as needed below.

## II. Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, or one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform his past relevant work or has no past relevant work but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work related activities. S.S.R. 96-8p, 1996 WL 374184.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the

evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.2d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not contain a complete written evaluation of every piece of evidence." *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala* 19 F.3d 329, 333 (7th Cir. 1997). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision. The ALJ must "provide some glimpse into his reasoning" and "build an accurate logical bridge from the evidence to his conclusion." *Dixon*, 270 F.3d at 1176. The scope of review is confined to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

### III. The ALJ's 2014 Decision

The ALJ first determined that Shank met the insured status requirements of the Act through June 30, 2016 and did not engaged in substantial gainful activity during the relevant disability period between August 1, 2008, and November 25, 2011 ("Relevant Period"). [Dkt. 8-2 at 35 (R. 34).] At step two, the ALJ found Shank's severe impairments to include "degenerative disc disease, diabetes mellitus, chronic obstructive pulmonary disease, hypertension, and obesity." [*Id.* (citations omitted).] At step three, the ALJ found that Shank did not have an impairment or combination of impairments that meets or medically equals a Listing. [Dkt. 8-2 at 37–40 (R. 36-39).]

Before step four, "[a]fter careful consideration of the entire record," the ALJ determined that Shank had the RFC to perform less than the full range of sedentary work with the following specific restrictions:

> [Shank may only engage in] lifting and carrying ten pounds occasionally and five pounds frequently; standing and/or walking for two hours in an eight-hour workday; sitting for eight hours in an eight-hour workday; [requiring] an option to stand at the workstation for up to five minutes each hour; and only occasional stooping, balancing, crouching, crawling, kneeling, and climbing.

[Dkt. 8-2 at 40 (R. 39).] At step four, the ALJ found that Shank was unable to perform his past relevant work as a press operator. [Dkt. 8-2 at 48 (R. 47).] After considering Shank's age, education, work experience, and RFC, the ALJ found that, prior to November 25, 2011, Shank could work as a circuit board assembler, surveillance system monitor, and document preparer, which jobs existed in significant numbers in the national economy. [Dkt. 8-2 at 49–50 (R. 48-49).] Based on these findings, the ALJ concluded at step five that Shank was not disabled during the Relevant Period. [Dkt. 8-2 at 50 (R. 49).]

### IV. Discussion

Shank challenges the ALJ's credibility determination and assessment of his treating physician's opinion. The Court addresses each in turn.

**A. Credibility Determination**

Shank argues that the ALJ relied upon impermissible inferences in assessing Shank's credibility. In response, the Commissioner argues that the ALJ did not rely upon any impermissible grounds and that, in any event, the ALJ did not patently err.

The ALJ's credibility assessment generally warrants "special deference because the ALJ is in the best position to see and hear the witness and determine credibility," *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000), though a court has "greater freedom to review credibility

5

determinations based on objective factors . . . rather than subjective considerations," *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005). Among the factors an ALJ may consider in evaluating credibility are daily activities, nature of pain, and use of medication or other treatment. *See* 20 C.F.R. § 404.1529(C)(3). While the ALJ may not disregard a claimant's testimony about the intensity of pain or its effect on her ability to work "solely because [it is] not substantiated by objective medical evidence," S.S.R. 96-7p, 1996 WL 374186,[3] the ALJ is still entitled to resolve any "discrepancies between the objective evidence and self-reports," *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010). The critical inquiry is whether the ALJ's credibility determination is "reasoned and supported," as it may be overturned only if it is "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008). A credibility determination is patently wrong if it "lacks any explanation or support." *Id.*

The Court agrees with Shank that the ALJ patently erred in assessing Shank's credibility. The ALJ found "inconsistencies in regards to his allegations of severe pain and the record as a whole." [Dkt. 8-2 at 46 (R. 45).] Specifically, the ALJ inappropriately addressed several factors, including the following:

- **Daily Living**. The ALJ concluded, in part, as follows: "Overall, while the claimant described some difficulties with activities of daily living, his cumulative reports do not appear to support a finding of 'disability.' . . . Seeing as how he lives alone, it appears that he is able to function independently." [Dkt. 8-2 at 46 (R. 45).] As the Seventh Circuit has observed,

> [E]xtrapolating from what people do at home, often out of necessity, to what they could do in a 40–hour–a–week job is perilous. At home one has much greater

---

[3] Social Security Ruling 96-7p was superseded in March 2016 by Social Security Ruling 16-3p, 2016 WL 1119029, but S.S.R. 16-3p is not retroactive. Social Security Ruling. 96-7p is therefore the operative ruling for this case, though the Court notes that the language in S.S.R. 16-3p is not substantially different, providing that the SSA "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* at *5.

6

flexibility about when and how hard and how continuously to work; one can rest
during the day (which one can't do in a 9–to–5 job); and sheer necessity may
compel one to perform tasks at home no matter how painful.

*Forsythe v. Colvin*, 813 F.3d 677, 679 (7th Cir. 2016) (Posner, J.). The ALJ's assumption that Shank lived alone because he had the capacity to live alone (and thus the capacity to work) instead of out of "sheer necessity" is left unexplained and is, therefore, wholly unsupported.

- **Inability to Objectively Verify**. The ALJ next stated that "it is difficult to objectively verify the claimant's reports." [Dkt. 8-2 at 16 (R. 45).] But the Seventh Circuit has noted the fallacy of such statements:

    Whatever uncertainty may exist around such self-reports is not by itself reason to
    discount them—otherwise, why ask in the first place? . . . By the ALJ's reasoning,
    the agency could ignore applicants' claims of severe pain simply because such
    subjective states are impossible to verify with complete certainty, yet the law is to
    the contrary.

*Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). The ALJ had no basis for discounting Shank's testimony simply because it cannot be objectively verified.

- **Work History**. The ALJ concluded that Shank's "work history reflects poorly on his allegations of disability." [Dkt. 8-2 at 46 (R. 45).] After briefly describing Shank's employment around the Relevant Period, the ALJ stated that

    [o]verall, the claimant's work history suggests that, even when complaining of
    physical pain to his treating physician, he continued to work. I find it suspect that
    the claimant could perform work as a warehouse picker immediately prior to his
    fiftieth birthday, but allege [sic] he could not even perform sedentary work at that
    time. Moreover, on some level, the claimant believed he could perform labor at a
    railroad, even as late as 2012.

[*Id.*] As for the railroad position to which Shank applied in 2012, Shank failed the required physical. [Dkt. 8-9 at 112 (R. 506).]

Again, however, the Seventh Circuit has succinctly disavowed this line of reasoning, observing that such "logic is backward: a claimant with a good work record is entitled to

7

substantial credibility when claiming an inability to work because of a disability. And, as we have explained, a claimant's desire to work is not inconsistent with her inability to work because of a disability." *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). The Court is troubled by the ALJ's cursory discussion of Shank's work history and hasty conclusion that it "reflects poorly" on Shank's credibility—particularly with respect to his **failed** attempt to work on a railroad. "Actually those [efforts to find work] were consistent with his wanting to lead a normal life yet being unable to land a job because he's disabled from gainful employment . . . ." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). Shank certainly should not have been discredited for attempting to find employment despite his physical limitations.

- **Treatment Records**. The ALJ further faults Shank for receiving only "little treatment" apart from medication and his spinal fusion surgery. [Dkt. 8-2 at 47 (R. 46).] The ALJ made no mention of Shank's lack of insurance and inability to pay for further treatment. [*See, e.g.*, Dkt. 8-3 at 11 (R. 96) (testimony of inability to pay and lack of insurance); Dkt. 8-9 at 75 (R. 469) (letter from treating physician noting Shank's lack of insurance and inability to "receive the treatment he needs to rehabilitate").] Again, there is on-point Seventh Circuit authority requiring the ALJ to "explore[] the claimant's explanations as to the lack of" medical treatment before making an adverse credibility finding. *Beardley*, 758 F.3d at 840. The ALJ failed to even acknowledge the undisputed evidence of Shank's indigence, which would reasonably explain the lack of specialist or other treatment.

Cumulatively, this non-exhaustive list of errors in the ALJ's credibility assessment undoubtedly rises to the level of patent error. It appears that the ALJ took every opportunity to discredit Shank, even where the record evidence supported Shank's allegations. Accordingly,

the Court should **REVERSE** the ALJ's determination that Shank was not disabled during the Relevant Period and **REMAND** Shank's application for further proceedings.

## B. Treating Physician's Opinion

Finally, Shank argues that the ALJ inappropriately assigned little weight to the opinion of Shank's treating physician, Dr. Martini. The Commissioner responds that the ALJ properly discredited Dr. Martini's opinion.

Dr. Martini was Shank's treating physician beginning in May 2005 and treated Shank throughout the Relevant Period. [Dkt. 8-9 at 103 (R. 497).] Dr. Martini opined in April 2011 that Shank's back problems "prevent[ed] him from returning to work." [Dkt. 8-9 at 75 (R. 469).] In February 2012, Dr. Martini completed a "multiple impairment questionnaire" in which she noted, among other things, that Shank has "significant limitations in doing repetitive reaching, handling, fingering, or lifting" [Dkt. 8-9 at 106 (R. 500)] and that Shank's pain and fatigue would "frequently" impact Shank's concentration [Dkt. 8-9 at 108 (R. 502)].

The treating physician rule requires the ALJ to give a physician's opinion controlling weight if it is "(1) supported by medical findings[] and (2) consistent with substantial evidence in the record."[4] *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(2); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)). But "[e]ven when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted simply to discard it." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). Rather, the regulations require the ALJ to assign a weight to the opinion based upon several factors:

> (1) the "[l]ength of the treatment relationship and the frequency of examination," because the longer a treating physician has seen a claimant, and particularly if the

---

[4] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. As Booker's application was filed before March 27, 2017, the treating physician rule applies. *See id.* § 404.1527.

9

treating physician has seen the claimant "long enough to have obtained a longitudinal picture" of the impairment, the more weight his opinion deserves; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., whether a physician's opinion is supported by relevant evidence, such as "medical signs and laboratory findings"; (4) consistency "with the record as a whole"; and (5) whether the treating physician was a specialist in the relevant area.

*Scrogham*, 765 F.3d at 697 (quoting 20 C.F.R. § 404.1527(c)(2)-(5)) (alterations in original). The ALJ must "minimally articulate his reasons" for assigning a particular weight to the physician's opinion. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)).

Contrary to Shank's assertions, the ALJ did not simply discard Dr. Martini's opinion, but instead assigned it a weight based upon the above factors. [*E.g.*, Dkt. 8-2 at 41 (R. 40) (discussing treatment relationship); Dkt. 8-2 at 44-45 (R. 43-44) (discussing length of treatment, nature of treatment, consistency with record, and noting use of question marks on assessment form).] For example, the ALJ's finding that Dr. Martini "seemed uncertain in her responses" is supported by the record, as Dr. Martini used question marks in several spots on the 2012 questionnaire form. [Dkt. 8-2 at 44-45 (R. 43-44) (citing Dkt. 8-9 at 103-110 (R. 497-504)).]

Nonetheless, the Court agrees with Shank that the ALJ failed to build a logical bridge to his weight assignment in two respects: First, the ALJ states that Dr. Martini "failed to explain" her opinion that Shank was "significantly limited." [Dkt. 8-2 at 42 (R. 41).] But Dr. Martini specifically states, for example, that she reviewed a lumbar MRI revealing moderate disk herniation and a cervical MRI revealing "disc herniation causing severe R[ight] neural foraminal narrowing." [Dkt. 8-9 at 103 (R. 497).] The ALJ's criticism of Dr. Martini on this point appears to be unfounded.

Second, the ALJ believed that Dr. Martini's February 2012 assessment was inconsistent with her April 2011 letter stating that Shank could not work. In support, the ALJ states that Dr.

10

Martini "essentially limited [Shank] to a range of sedentary work." [Dkt. 8-2 at 45 (R. 44).] But the record is devoid as to whether jobs exist for the "range of sedentary work" to which Dr. Martini apparently limited Shank. Without such evidence, the ALJ's explanation that Dr. Martini's two opinions are inconsistent with one another is mere conjecture. As this matter requires remand for the ALJ's credibility assessment, the ALJ should additionally revisit his assessment of Dr. Martini's opinions as described herein.

## V. Conclusion

For the foregoing reasons, the Court concludes that the ALJ has failed to build a logical bridge from the evidence to his conclusion that Shank was not disabled during the Relevant Period from August 1, 2008, to November 25, 2011. The Magistrate Judge therefore recommends that the District Judge **REVERSE** the Commissioner's decision and **REMAND** Shank's application for further proceedings.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated: 6 JUN 2017

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.

11